```
                                              U.S. DISTRICT COURT
                                              DISTRICT OF VERMONT
         UNITED STATES DISTRICT COURT              FILED
                   FOR THE
            DISTRICT OF VERMONT               2025 AUG -4 PM 1:57

                                                    CLERK
                                              BY_____
UNITED STATES OF AMERICA,    )                     DEPUTY CLERK
                             )
        v.                   )         No. 2:24-cr-00113-1
                             )
MICHAEL ROBISTOW,            )
        Defendant.           )
```

**ORDER ON DEFENDANT'S MOTION TO DISMISS INDICTMENT**
(Doc. 19)

Defendant Michael Robistow ("Defendant") is charged with unlawfully possessing a firearm after being convicted of an offense punishable by imprisonment of more than one year, in violation of 18 U.S.C. § 922(g). Defendant filed a motion to dismiss the indictment, arguing that 18 U.S.C. § 922(g) is unconstitutional as-applied to him because he was convicted of a non-violent felony. (Doc. 19.) The government opposed this motion in a response filed on February 12, 2025. (Doc. 21.)

On June 9, 2025, the Second Circuit issued a decision in *Zherka v. Bondi*, 140 F.4th 68 (2d Cir. 2025), which addressed the precise issues raised by Defendant. At a hearing held on June 10, 2025, the court asked the parties to file supplemental memoranda regarding the impact of the *Zherka* decision on the pending motion. The supplemental memoranda were filed on June 24, 2025. For the reasons set forth below, Defendant's motion is DENIED.

On June 9, 2024, the United States Coast Guard was conducting patrol on Lake Champlain. During that patrol, the Coast Guard stopped and boarded a vessel owned by Defendant to perform a routine safety inspection. (Doc. 19 at 2.) During the safety inspection, as well as a subsequent stop and search of the vessel, several firearms and ammunition were discovered.

Defendant was convicted of possession of stolen goods on December 13, 1994 in North Carolina. (Doc. 19-1 at 1.) This offense carried a maximum penalty of imprisonment for a term exceeding one year. Based on these facts, the grand jury returned an indictment against Defendant on October 16, 2024, alleging that he unlawfully possessed a firearm in violation of 18 U.S.C. § 922(g). A superseding indictment was returned on May 28, 2025. (Doc. 44.)

On January 13, 2025, Defendant filed a motion to dismiss the indictment. (Doc. 19.) Defendant argues § 922(g)(1) is unconstitutional, as applied to him, because it is "unmoored from our nation's historical firearm regulations and, therefore, unconstitutionally strips [him] of his Second Amendment right to keep and bear arms." (*Id.* at 3.) Defendant seeks dismissal of the indictment under the framework of *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022) and asks the court to follow the "developing body [of] law applying the *Bruen* standard to nonviolent felons." (Doc. 19 at 5) (emphasis omitted).

In its post-*Zherka* memorandum, the government argues *Zherka* is dispositive based on the Second Circuit's holding that § 922(g)(1) is both facially constitutional and constitutional as-applied to individuals convicted of nonviolent felonies. (Doc. 68 at 1.) Defendant acknowledges these holdings, but argues his case is distinguishable from *Zherka*. Defendant asserts the government cannot demonstrate that prohibiting individuals who have been convicted of possessing stolen property is consistent with "the Nation's historical tradition of firearm regulation." (Doc. 67 at 2.) Defendant distinguishes the specific facts of his case from *Zherka* by asserting that, unlike the charged offense in *Zherka*, "a closely analogous law shows that those defendants who were convicted of possession of stolen property in the 1790s, were not deprived of their right to possess arms." (*Id.*) Specifically, Defendant highlights that Section 17 of the

2

Crimes Act of 1790 punished possession of stolen property with fines and public whippings. Act of April 30, 1790, ch. 9, § 17, 1 Stat. 112, 116 ("Crimes Act of 1790").

The Second Circuit addressed and rejected this type of offense-by-offense approach in *Zherka*. The Second Circuit noted that any effort to exempt certain felonies from the prohibition in 18 U.S.C. § 922(g) would not only "usurp the legislative function [but] would also embark on a line-drawing process that would raise endless questions." *Zherka*, 140 F.4th at 94. "[A]ny effort by the courts to craft a line that would separate some felons from others is fraught with peril." *Id*.

Defendant's argument in this case exemplifies the peril. Defendant's underlying conviction stems from the possession of a stolen motor vehicle. The historical analogy for motor vehicles in 1790, as a means of transportation, was likely horses. The penalty for horse theft in North Carolina in 1790 was death, which would result in the permanent disarmament for those convicted of that offense. Nov. 1790 N.C. Laws ch. 12, https://ncleg.gov/Files/Library/sessionlaws/1785-1790/pubs_generalassembly_serial_sessionlaws1790.pdf [https://perma.cc/DJ7A-5TF7]. As was discussed in *Zherka*, "the standard punishment for a felony was death and the forfeiture of all property." *Zherka*, 140 F.4th at 82. If Defendant's argument is accepted, this court will be left to determine whether theft of stolen vehicles should be treated comparably to nondescript stolen property or stolen horses. This type of "line drawing" is exactly what the Second Circuit has signaled should be avoided. *See Zherka*, 140 F.4th at 95.

For the reasons set forth above, the court DENIES Defendant's motion to dismiss the indictment. (Doc. 19.)

Dated at Rutland, in the District of Vermont, this 4th day of August 2025.

Mary Kay Lanthier
United States District Court Judge

3